IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, <br>     Plaintiff, <br> <br> VS. <br> <br> REBECCA D. VASQUEZ, et al., <br>     Defendants. | § <br> § <br> § <br> § <br> §     ACTION NO. 4:24-CV-00009-BJ <br> § <br> § <br> § |

## MEMORANDUM OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court are (1) Defendant Rebecca D. Vasquez ("Vasquez")'s Motion for Summary Judgment [Docket No. 20], filed July 25, 2024, and (2) Defendant Elvira S. Avelar ("Avelar")'s Cross-Motion for Summary Judgment [Docket No. 24], filed August 5, 2024. Having carefully considered the motions, responses, and replies, the Court **FINDS** and **CONCLUDES** that Vasquez's Motion for Summary Judgment should be **DENIED** and Avelar's Cross-Motion for Summary Judgment should be **GRANTED**.

### I.     RELEVANT BACKGROUND

On January 4, 2024, Plaintiff, Metropolitan Life Insurance Company ("Metro Life"), filed this interpleader action arising out of conflicting claims made by possible beneficiaries to life insurance benefits payable under the Federal Group Life Insurance ("FEGLI") Program. (Plaintiff's Complaint ("Pl.'s Compl.") at 1.) The following facts are not in dispute. Federal employee John Mario Vasquez (hereinafter "the Insured") was employed by the Defense Contract Management Agency, a division of the United States Department of Defense, in Grand Prairie, Texas. The Insured was a participant of the FEGLI Program and died on September 7, 2021, at which time the Insured's FEGLI benefits became payable to the proper beneficiary. The FEGLI

benefits in issue total $591,000[1] (the "FEGLI Benefits"). Following the Insured's death, Vasquez, the Insured's wife, and Avelar, the Insured's mother, made conflicting claims to the FEGLI Benefits.

At the time of the Insured's death, the only beneficiary designation form found in his personnel file was dated November 15, 2007, and named Avelar as the beneficiary ("2007 Beneficiary Designation"). (Pl.'s Compl. at 4; Pl.'s Compl. at Ex. A.) Based on the information provided by the Insured's employing agency, including the 2007 Beneficiary Designation, and the applicable provisions of the Federal Employees' Group Life Insurance Act ("FEGLIA"), the federal regulations, and the FEGLI Policy, Metro Life determined that Avelar established a valid claim and that the FEGLI Benefits were payable to her. Metro Life then denied Vasquez's claim for the FEGLI Benefits.

In response to the denial of her claim, Vasquez submitted a subsequent claim to the Insured's employing agency and included a Designation of Beneficiary Form dated April 13, 2013, which named her as the primary beneficiary and Avelar as the contingent beneficiary ("2013 Beneficiary Designation"). (Pl.'s Compl. at 5-6; Pl.'s Compl. at Ex. B.) The Insured's employing agency then sent Metro Life a letter with Vasquez's claim and included the "uncertified"[2] 2013 Beneficiary Designation and a Memorandum from the Agency, which stated:

---

[1] While Plaintiff asserts in their complaint that the FEGLI Benefits at issue amount to $591,000, the Court notes that Plaintiff deposited $597,516.69 in the Court's Registry on March 27, 2024. For purposes of this Memorandum Opinion the "FEGLI Benefits" shall refer to the amount deposited by Plaintiff and any interest that has since accrued, if any.

[2] The 2013 Beneficiary Designation is signed by the Insured and two witnesses, but Section E on the form, reserved for the signature of the receiving agency, is blank. (Defendant Vasquez's Appendix for Motion for Summary Judgment ("Vasquez App.") at Sub-Ex. B-1.)

> This is to certify that employee John M. Vasquez . . . has a certified [Beneficiary Designation Form] dated 11/27/2007[3] on file with this Agency. Mr. Vasquez's spouse has submitted a second beneficiary form to this office *after* the death of Mr. Vasquez. This [Beneficiary Designation Form] has *not been certified*. Mrs. Vasquez states that [the] beneficiary form was submitted in 2013 when the agency was serviced by the Army Benefits Center [("ABC")]. We have consulted with the ABC, however, the certified copy of this document could not be located.

(Pl.'s Compl. at Ex. C (emphasis added).)

After receiving and reviewing this information, Metro Life sent Vasquez a letter denying her claim. (Pl.'s Compl. at 5.) In the letter, Metro Life stated that the "designation was not received by the employing agency prior to the death of [the Insured] . . . [and is thus] not valid according to the FEGLI statute." (Pl.'s Compl. at 5). In response to Metro Life's denial letter, Vasquez responded with a letter contending that the Insured had, in fact, turned the 2013 Beneficiary Designation into a Human Resources ("H.R.") representative at the Dallas Army Aviation Support Facility ("Dallas AASF") and enclosed a statement from Benjamin Hale ("Hale"), the Insured's supervisor, who claimed to have witnessed the Insured turn in the form to the appropriate office. (Pl.'s Compl. at 5-6.)

Upon receiving the letter, Metro Life submitted the documents to a H.R. Specialist with the Insured's employing agency. After review, the H.R. Specialist concluded the following: (1) that the H.R. Specialist had access to the Insured's entire eOPF ("electronic Official Personnel Folder"), (2) that the 2013 Beneficiary Designation was not in the Insured's eOPF, and (3) that the ABC found that no 2013 beneficiary forms were on file. (Pl.'s Compl. at 6.) Based on this information, Metro Life again advised Vasquez in writing of the denial of her claim, stating that neither the Insured's employing agency nor the ABC had the 2013 Beneficiary Designation on file.

---

[3] The Court notes that the 2007 Beneficiary Designation does not bear a date of November 27, 2007, but instead bears two dates: 1) November 15, 2007, the date the Insured signed the beneficiary designation, and 2) November 29, 2007, the date the receiving agency received the form. (Pl.'s Compl. at Ex. A.)

(*Id*.)  Furthermore, in denying Vasquez's claim, Metro Life claimed in their letter that the 2013 Beneficiary Designation did not indicate that it had been received by the employing agency because Section E of the form was not filled out, contrary to the instructions on the 2013 Beneficiary Designation.

## II. PARTIES' ARGUMENTS

In Defendant Vasquez's Brief in Support of her Motion for Summary Judgment ("Vasquez Br."), Vasquez argues that the Insured satisfied all requirements under the FEGLIA for making Vasquez his beneficiary, and thus, the 2013 Beneficiary Designation was effective.  (Vasquez Br. at 5.)  Specifically, Vasquez argues that the only requirements set forth by the FEGLIA for a "beneficiary designation to be effective [are]: 1) the form must be signed by the employee; 2) it must be signed by two witnesses; and 3) it must be *delivered* to the employee's employing office prior to the employee's death."  (*Id.*)  According to Vasquez, the 2013 Beneficiary Designation was effective because it 1) was signed by the Insured; 2) was signed by two witnesses; and 3) the sworn affidavit of Hale establishes that it was delivered to the Insured's employing office.  (Vasquez Br. at 6; Appendix in Support of Defendant Vasquez's Motion for Summary Judgment and Brief in Opposition to Defendant Avelar's Cross-Motion for Summary Judgment ("Vasquez App.") at Ex. B., Ex. B-1.)

Vasquez further contends that the terms "filing" and "receipt" are the same thing under the FEGLIA and are encompassed under the requirement that such a form be "received" by the employing office before the death of the employee.  (Combined Reply Brief in Support of Defendant Vasquez's Motion for Summary Judgment and Brief in Opposition to Defendant Avelar's Cross-Motion for Summary Judgment ("Vasquez Reply") at 2.)  While Vasquez agrees that there must be some evidence that the form was received by the employing office, she argues

that the form does not need to be marked "received" or found in an employee's personnel file, and that "the only other consideration is whether the form was properly signed and witnessed." (Vasquez Reply at 2, 7.)  Furthermore, Vasquez contends that the Dallas AASF was the appropriate office to deliver the designation forms to because it was the Insured's employing office and that hand-delivering the form was a valid method of submission.  (Vasquez Reply at 5.)

In support of her stance, Vasquez argues that *Coomer v. United States*, 471 F.2d 1, 2 (5th Cir. 1973), is applicable and binding on this Court.  (Vasquez Br. at 8; Vasquez Reply at 7.) According to Vasquez, *Coomer* stands for the proposition that a beneficiary designation form is "received" when it is handed to the person put in charge of managing such forms, regardless of whether such a form is found in the individual's personnel file at the time of their death.  (Vasquez Br. at 9.)  While Vasquez acknowledges that the Fifth Circuit did not define "receipt," she relies on the Court's interpretation that "whatever [the term] receipt means, it certainly occurs when the serviceman hands the writing naming the beneficiary to the person the Navy has put in charge of receiving and maintaining the beneficiary forms." *Coomer*, 471 F.2d at 5. (*See* Vasquez Br. at 9.)

Vasquez argues that, consequently, as it relates to this case, the requirement that the form be "received" under the FEGLIA was satisfied because Hale testifies to watching the Insured hand the form over to the appropriate H.R. personnel at the Dallas AASF.  (Vasquez Reply at 8.)  In light of *Coomer* and Vasquez's contention that the Insured satisfied all the statutory and regulatory requirements for making Vasquez his FEGLI beneficiary, Vasquez argues that the Insured's intent should, thus, be honored.  (Vasquez Br. at 10.)   Therefore, because the 2013 Beneficiary Designation was effective, Vasquez argues that she is entitled to summary judgment.  (Vasquez Br. at 10.)

In response, and in her Cross-Motion for Summary Judgment, Avelar begins by arguing that the affidavits of Hale and Vasquez are not competent summary judgment evidence and as such should not be considered.[4] (Elvira Avelar's Brief in Support of her Response in Opposition to Rebecca Vasquez's Motion for Summary Judgment and Avelar's Cross-Motion for Summary Judgment ("Avelar Br.") at 6.) Even if this Court were to consider the affidavits, Avelar further argues that neither Hale nor Vasquez provides a clear basis for their personal knowledge of the facts to which they attest. (Avelar Br. at 8-9.) As it relates to Hale's affidavit, Avelar takes issue with Hale's general description of watching the Insured provide the forms to an unidentified H.R. personnel while failing to state who the appropriate H.R. personnel may be as well as why that individual would have been the "appropriate" individual to receive such forms. (Avelar Br. at 9.)

Avelar further argues that, even considering the affidavits of Hale and Vasquez, the affidavits are "still insufficient to meet the requirements under the FEGLIA statutory scheme and following case law, which require some sort of 'receipt' or 'filing' of the beneficiary designation before it can become effective." (Avelar Br. at 12.) Avelar distinguishes the cases relied on by Vasquez, noting that the cases require some indicia of receipt and that such evidence of receipt in *Coomer* came from the "uncontroverted testimony of the very person in charge of maintaining the decedent's records, who testified that he himself prepared the designation form, signed the form

---

[4] "In both state and federal court, . . . affidavits are a recognizable form of summary judgment evidence." *Estrada v. State Farm Mut. Auto. Ins. Co.*, 897 F. Supp. 321, 325 (W.D. Tex. 1995); FED. R. CIV. PROC. 56(a), (e); TEX. R. CIV. PROC. 166(a). The Court notes that Avelar's argument that Hale and Vasquez's affidavits are not competent summary judgment evidence centers around that each affidavit, while made under penalty of perjury, failed to include language verifying that the statements are "true and correct." (Avelar Br. at 6-7.) In this case, because Vasquez submitted corrected affidavits for herself and Hale that contained the wording "true and correct" after Avelar put forth her arguments, this Court finds that Avelar would not be prejudiced if the affidavits were to be considered. (*See* Vasquez Reply at 9; Appendix in Support of Defendant Vasquez's Motion for Summary Judgment and Brief in Opposition to Defendant Avelar's Cross-Motion for Summary Judgment ("Vasquez Amended App.") at Ex. A, Ex. B). As such, the Court finds Avelar's argument that the affidavits are not competent summary judgment evidence moot.

along with the decedent, and that he actually received the completed designation form." (Avelar Br. 21-22.)

The brunt of Avelar's argument is that, even if the affidavits of Hale and Vasquez are considered, evidence of mere delivery of the beneficiary designation forms is insufficient to change a beneficiary under the statute without further indicia of receipt. (Avelar Br. at 20.) Avelar argues that, since the 2013 Beneficiary Designation was neither filed nor shows any evidence of receipt, it was not effective under FEGLIA; therefore, the FEGLI Benefits should be distributed according to the last valid beneficiary designation received by the appropriate office, which is the 2007 Beneficiary Designation. (Avelar Br. at 31-32.) Since the validity of the 2007 Beneficiary Designation is undisputed, Avelar argues that her cross-motion for summary judgment should be granted. (Avelar Br. at 32.)

### III.  LEGAL STANDARD

#### A.  Summary Judgment Standard

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.3d 167, 178 (5th Cir. 1990). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, "to achieve the just, speedy, and inexpensive determination of actions, and when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenote v. Upjohn Co.*, 80 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

All of the evidence must be viewed in the light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citations omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2011) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. In assessing whether there is a dispute over any material fact, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

Additionally, although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Federal Rule of Civil Procedure ("Rule") 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted).

B.      **FEGLIA Framework**

The life insurance policy at issue here is a FEGLI Policy and is governed by the FEGLIA. 5 U.S.C. § 8701 *et seq*. The FEGLIA was enacted in 1954 to "provide low-cost group life insurance to Federal employees." H.R. Rep. No. 2579, 83d Cong., 2d Sess., 1 (1954). The

program itself is administered by the Office of Personnel Management ("OPM"). 5 U.S.C. § 8716. However, individual employees who enroll receive coverage under a life insurance contract between OPM and Metro Life. *See Hillman v. Maretta*, 569 U.S. 483, 485 (2013); 5 CFR § 870.102 (2024).

The FEGLIA sets forth a specific "order of precedence" for which insurance benefits are to be paid when a participating employee dies. 5 U.S.C. § 8705(a). In 1966, Congress amended § 8705(a) in response to the Ninth Circuit's decision in *Sears v. Austin*, 292 F.2d 690, 690 (9th Cir. 1961), which held "that the clearly manifested intent of the insured should control" the designation of a beneficiary, even if the method specified in a policy is not followed. *Id.* at 693.[5] In amending this section, Congress explicitly stated that the amendment was intended to "clarify Congress' intent [and] to state clearly the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received in the employing office." S.Rep. No. 1064, 89th Cong., 2d Sess., 2 (1966).

Section 8705(a), which details the manner in which insurance proceeds are distributed, now provides, in relevant part, as follows:

> (a) Except as provided in subsection (e), the amount of group life insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
> First to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing *received* before the death in the employing office or, . . . in the Office of Personnel Management. For this purpose, a designation, change or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

5 U.S.C. § 8705(a) (emphasis added).

---

[5] In *Sears*, the deceased failed to make any designation of beneficiary under his FEGLI Policy and, rather than adhering to the order of precedence in § 8705(a) of the FEGLIA, the Ninth Circuit, in the absence of any other designation, permitted a holographic will to be an acceptable method for designating a beneficiary. *Sears*, 292 F.2d at 690.

Courts have since found the amended "language [and statute as a whole, to] indicate that Congress intended to establish, for reasons of administrative convenience and for the benefit of the designated beneficiaries, an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case." *O'Neal v. Gonzales*, 839 F.2d 1437, 1440 (11th Cir. 1988); *see Hillman*, 569 U.S. at 495 ("Rather than draw an inference about an employee's probable intent from a range of sources, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be."); *Metropolitan Life Ins. Co. v. Bell*, 924 F. Supp. 63, 65 (E.D. Tex. 1995) (finding the "language . . . unambiguous and offers no basis to apply it other than as it is written"). "When a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Singleton v. Singleton*, No. 4:06-cv-3685, 2008 WL 11391297, at 3 (S.D. Tex. July 15, 2008).

While a participating employee retains the right to alter or revoke a beneficiary designation until death, Congress imposed limitations on this right by prescribing the specific procedures for enacting such changes, as detailed in 5 C.F.R. § 870.802(b). Those specific procedures provide that:

> "[a] designation beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people. The completed designation of beneficiary form may be submitted to the appropriate office via appropriate methods approved by the employing office. The appropriate office must receive the designation before the death of the insured."

5 C.F.R. § 870.802(b). These procedures ensure that beneficiary designations are both deliberate and documented. *Hillman*, 569 U.S. at 495. Afterall, "[an] employee's ability to name a beneficiary acts as a

'guarantee of the complete and full performance of the contract to the exclusion of conflicting claims.'" *Id.* (internal citations omitted).

## IV.     ANALYSIS

### A.     Validity of the 2013 Beneficiary Designation

The validity of the 2013 Beneficiary Designation is dependent on this Court's interpretation of what it means for the "appropriate office [to] *receive* [the] designation before the death of the insured." 5 C.F.R. § 870.802(b) (emphasis added). As the FEGLIA does not define when a form has been "received," both Defendants, as set forth in their arguments above, now urge the Court to adopt their interpretations.

As set forth above, the FEGLIA mandates strict compliance with the procedures for designating a beneficiary, requiring that the designation form: 1) be in writing, 2) signed by the insured, 3) witnessed and signed by two people, 4) submitted to the appropriate office using appropriate methods, and 5) received by the appropriate office before the death of the insured. 5 C.F.R. § 807.802(b). Interpreting this procedure, the Court distinguishes between submission of the form to the appropriate office and the actual receipt of the form by the office. Because the meaning of "receipt" is dispositive, the Court begins its analysis there.

Generally, "actual receipt is a pre-condition to effectiveness." *Metro. Life Ins. Co. v. Bradshaw*, 450 F. Supp. 3d, 1258, 1264 (W.D. Okla. 2020). Evidence of "receipt" may be a formal acknowledgment by the office on the beneficiary designation itself. *See Switzer v. Vaughan*, No. 05-15-00811-CV, 2016 WL 4046990, at 2* (Tex. App.– Dallas July 27, 2016, pet. denied) (mem. op) (where the court, in distinguishing two beneficiary designations, noted that while the postal office acknowledged receipt by signing one form, the other form contained a blank space indicating "the postal service had not completed the form acknowledging its receipt of the form");

*Maris v. McCraw*, 902 S.W.2d 191, 193 (Tex. App. 1995) (finding that although not in the decedent's personnel file, two of the beneficiary designation forms were "file-marked copies" indicating they had been filed and received by the appropriate office); *Terry v. LaGrois*, 354 F.3d 527, 529 (6th Cir. 2004) (finding "the Postal Service acknowledged receipt of the form"); *Prudential Ins. Co. of America v. Ligon*, 915 F. Supp. 1183, 1187 (M.D. Ala. Jan. 3, 1996) (where a beneficiary form found not to have been received within the meaning of the Servicemen's Group Life Insurance Act ("SGLIA")[6] failed to have a stamped "date indicating the time that [the] document was 'received.'").

The FEGLI Handbook itself requires the employing office to acknowledge receipt of the form, advising employees to obtain "a duplicate copy . . . of [their] designation, signed and receipted by an authorized official of [their] employing agency, to ensure that [their] designation is properly on file."[7] *See Coleman v. Warren-Malone*, 1:21-CV-00808, 2022 WL 19076602, at 7* (W.D. Tex. Dec. 8, 2022) (finding that mere delivery alone of the designation to the appropriate office is insufficient since the FEGLI Handbook provides OPM the authority to accept or reject a beneficiary designation form).

In line with case law and the interpretation utilized by the FEGLI Handbook, "receipt" means "to acknowledge in writing that something has been received." *Receipt*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, a beneficiary designation form that is signed, stamped, or acknowledged in some form by the employing agency is deemed to be "received" within the

---

[6] Courts have interpreted SGLIA provisions in line with provisions under the FEGLIA, as "the basic structure of the Servicemen's Group Life Insurance Act was modeled after the provisions of the Federal Employee's Group Life Insurance Act." *Stribling v. United States*, 419 F.2d 1350, 1353 (8th Cir. 1969). The procedures under both acts for designating a beneficiary are "virtually identical, and each expressly provides that such a designation be in writing and received by the Federal Government." *Id.*

[7] U.S. OPM, FEDERAL EMPLOYEES' GROUP LIFE INSURANCE HANDBOOK ("FEGLI HANDBOOK") 147 (2019), Federal Employees' Group Life Insurance (FEGLI) Handbook (opm.gov)

meaning of the FEGLIA at the time it receives such acknowledgment. While it may seem tedious and harsh to require indicia of receipt from the appropriate office for a form to be "received," this requirement furthers and is in line with Congress' goal of "avoiding the 'administrative difficulties' inherent in allowing unspecified 'extraneous documents' designating a beneficiary to be considered." *Terry*, 354 F.3d at 533.

The location of a form that is not signed by an authorized official may still be evidence of "receipt" where it is found within an employee's personnel file. *See Handly v. Lyons*, 475 S.W.2d 451, 459 (Mo. Ct. App. Oct. 4, 1971) (finding a beneficiary designation that lacked the signature of the receiving officer to have been "received" by the appropriate office because it was still found within the employee's personnel file); *Patterson v. Metro. Life Ins. Co.*, No. 17-7188, 2018 WL 1582970, at 3* (E.D. La. April 2, 2018) (stating that, while "[i]t is true that the [designation] form lacks any stamp or notation indicating receipt by the employing office[,]. . . it is also true that OPM actually possessed the [designation] form and provided it to MetLife shortly after [the decedent's] death. Such possession suffices to establish receipt.").

While this Court agrees with Vasquez that a beneficiary designation form need not be in an employee's personnel file to be effective, a form not within an employee's personnel file must then bear some indicia of the receipt as explained above. *See Tilley v. Barrs*, No. 5:08-CV-434 (HL), 2010 WL 11515546, at 1* (M.D. Ga. May 11, 2010) (finding a beneficiary designation lacking information concerning "what agency received the form, when it was received, and by whom it was received" and not found in the employee's personnel file was not effective under the FEGLIA); *Prudential Ins. Co. v. Perez*, 51 F.3d 197, 199 (9th Cir. 1995) (where a beneficiary designation form under the SGLIA was found to be "received" when the form was handed to and signed by an individual in charge of maintaining such forms even though the original form was

not found in the decedent's personnel file.). Although, as stated by the Ninth Circuit in *Perez*, the "case law construing the meaning of the term 'received' is sparse," the interpretation of the word by other courts seems to denote some acknowledgement that the form has been received by the appropriate office. *Id.*

In this case, it is undisputed that neither the Department of Defense nor the ABC has a record of the 2013 Beneficiary Designation form, despite searching the Insured's entire personnel file. (Vasquez Br. at 4; Avelar Br. at 18). Furthermore, the sections of the 2013 Beneficiary Designation setting forth the signature of the receiving agency and the date the forms were received are blank. (Vasquez App. at Ex. B-1.) While Vasquez argues a form does not have to be recorded in an insured's personnel file or marked as received to be effective, she fails to cite a case where a form not found in an employee's personnel file and without any indicia of receipt has been found valid.[8]

Vasquez contends that *Coomer* is applicable and binding on this Court in determining what constitutes "receipt" of a beneficiary designation. *Coomer* 471 F.2d at 2. In *Coomer*, the decedent purchased a life insurance policy through the SGLIA program, which specified that "in the event of death, the insurance proceeds will be paid to the beneficiary designated by the insured by a writing received in the uniformed services." *Id.*; *see* 38 U.S.C. § 1970(a). While his battalion was stationed in Vietnam, the decedent completed a beneficiary designation form designating his father as the beneficiary. *Id.* This designation form was signed by the decedent and Roy L. Elliot ("Elliot"), the personnel officer responsible for maintaining the battalion's service records. *Id.*

---

[8] Vasquez relies on *Kozlowski v. Metro. Life Ins. Co.* for her argument that a beneficiary designation does not need to be in an employee's personnel file nor must it be marked as "received." *See Kozlowski v. Metro. Life Ins. Co.*, No. 8:22-cv-204-MSS-JSS, 2023 WL 7128911, at 4* (M.D. Fla. June 1, 2023). Based on this case, Vasquez argues that the test is "whether the proponent of an unrecorded form can show that it was actually received by the employing office." (Vasquez Reply at 7.) However, in *Kozlowski*, the court, although not discussing whether the form need be in an employee's personnel file or signed by the appropriate office, still conducted an inquiry into the indicia of receipt, which it found no conclusive evidence of. *Kozlowski*, 2023 WL 7128911, at 4*.

After completing his tour in Vietnam, the decedent returned to the United States carrying his sealed personnel file and official records, as was customary in the Navy. *Id.* Upon his return, the decedent married, but he later separated before being killed in an explosion. *Id.* at 3. After his death, the Navy, upon reviewing his service file, found no beneficiary designation form, and, as a result, paid the insurance proceeds to the decedent's wife. *Id.* Shortly after the proceeds were paid, the decedent's parents discovered the beneficiary designation form among his personal effects, which named his father as the beneficiary. *Id.* In determining whether the form was received within the meaning of the SGLIA, the Fifth Circuit found "receipt" to "certainly occur when the serviceman hands the writing naming the beneficiary to the person whom the Navy has put in charge of receiving and maintaining the beneficiary designation forms." *Id.* at 5.

As *Coomer* did not "define the precise outer limits of the term [receipt] by going into the question of exactly by whom and in what place the writing must be received before a beneficiary is legally designated," the Court finds *Coomer* inapplicable to the present case. *Id.* While neither the beneficiary designation form in *Coomer* nor the 2013 Beneficiary Designation in this case were present in the relevant insured's official personnel file at the time of death, the presence of indicia of receipt on the beneficiary form in *Coomer* distinguishes the two cases. The signature of Elliot in *Coomer* served to attest to witnessing the decedent sign the form and as a formal acknowledgment of receipt by an authorized official, as he was the individual designated for receiving such forms. *Id.* In the present case, the 2013 Beneficiary Designation itself is void of any indicia of receipt. As stated above, it's undisputed that the form was not in the Insured's personnel file and it contains no signatures, stamps, or any symbols from a receiving agency acknowledging its receipt. While Hale can attest to witnessing the Insured sign the form and deliver it to an unidentified H.R. personnel, there remains a lack of any indicia of receipt from the

appropriate office. Although Vasquez urges this Court to find Hale's affidavit as well as her own[9] sufficient as indicia of receipt, neither affidavit addresses whether the unidentified H.R. personnel accepted the form, whether Hale witnessed the H.R. personnel sign the form, whether the Insured received a signed duplicate copy,[10] or any information beyond the Insured's delivery of the form.

This issue is further compounded by the fact that, in this case, the ABC—*i.e.*, the appropriate office—has no record of receiving the 2013 Beneficiary Designation. Unlike in *Coomer*, where Elliot testified that he prepared, signed, and received the decedent's beneficiary designation form, no testimony has been offered in this case from an individual tasked with receiving the form, who in fact received the form.[11] While the beneficiary designation in *Coomer* was not in the decedent's personnel file at the time of his death, its presence in the file was not necessary as it had already been received under the SGLIA through the actions of Elliot. Furthermore, unlike this case, the decedent in *Coomer* had no other valid beneficiary designation

---

[9] Unsatisfied with how courts applied the FEGLIA, Congress, in amending 5 U.S.C. § 8705(a), foreclosed the inquiry into the probable intent of a decedent by "establishing a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be." *Hillman*, 569 U.S. at 495. In *Smith*, the decedent's wife provided testimony that the decedent had communicated that she was the beneficiary under the policy to her and his supervisor. *Smith v. Smith*, No. 13-CV-1635 (SJF) (ARL), 2014 WL 4425807, at 2* (E.D.N.Y. Sep. 4, 2014). Evidence was also provided to show that the decedent extensively discussed his finances and reiterated wanting his wife to be the beneficiary of the FEGLI Policy. *Id.* Nonetheless, the form designating his wife was not found in his personnel file and the court found that it was not received within the meaning of the statute. In this case, the affidavit of Vasquez does not provide indicia of receipt but rather delves into the probable intent of the Insured as to why he increased his policy coverage under the FEGLIA. As this Court makes no findings for the intent of the Insured but is strictly adhering to the statute, the Court finds it unnecessary to consider the Vasquez affidavit.

[10] The procedures set forth in the FEGLI Handbook denote that an employee will receive a copy of the original form for their own records. *See* FEGLI HANDBOOK *supra* n.6 at 150 (in describing the Employing Office's Actions, "[t]he duplicate copy (or copy of the original), dated and signed by an authorized official, is returned to you.").

[11] The Court notes that Avelar argues that there is no evidence that the H.R. personnel on duty at the Dallas AASF was the appropriate office to deliver the beneficiary designation forms. (Avelar Br. at 19.) However, this Court limits its analysis to whether the form was "received" within the meaning of the statute and does not address whether the H.R. personnel on duty at the Dallas AASF was the appropriate employing office to receive the forms. Whether the H.R. personnel was authorized to receive such forms is a separate analysis that focuses on the second requirement for designating a beneficiary, *i.e.*, that it must be submitted to the appropriate office, which is not part of this Court's discussion.

in his personnel file. As the 2013 Beneficiary Designation bears no indicia of receipt and failed to be in the Insured's personnel file, this Court again finds *Coomer* distinguishable.

Delivery or submission of a beneficiary designation form is a necessary component of the procedure for designating a beneficiary under the FEGLIA but without any indicia of receipt by the appropriate office, mere delivery alone is insufficient.[12] Since the FEGLIA requires strict compliance with the procedures for designating a beneficiary and the 2013 Beneficiary Designation lacks any indicia of receipt, this Court finds the 2013 Beneficiary Designation was not received by the Insured's employing office prior to his death. Thus, under the FEGLIA, the 2013 Beneficiary Designation was not effective.[13]

### B.    Entitlement to the FEGLI Benefits

Under the FEGLIA, the insurance proceeds are to be paid according to the most recent, valid beneficiary designation received by the insured's employing office prior to their death. 5 U.S.C. § 87059(a). In making this determination, "the equities are neither relevant nor determinative on the issue of who is entitled to FEGLI life insurance proceeds." *Smith*, 2014 WL 4425807, at 6* (quoting *Metro. Life Ins. Co. v. Holland*, 134 F. Supp.2d 1197, 1202 (D.Or. Mar. 16, 2001). Simply put, the proceeds under a FEGLI policy "belong to the named beneficiary and no other." *Hillman*, 569 U.S. at 492.

In this case, it is undisputed that the 2007 Beneficiary Designation was the only designation form that was in the Insured's personnel file at the time of his death. (Vasquez Br. at 4.)

---

[12] To strictly comply with the procedures for designating a beneficiary under the FEGLIA, a beneficiary designation shall be "*submitted* to the appropriate office . . . [*and*] [t]he appropriate office *must receive* the designation before the death of the insured." 5 C.F.R. § 870.802(b) (emphasis added).

[13] The Court notes that in interpreting the procedures for designating a beneficiary under the FEGLIA as distinguishing between submission of the form and actual receipt of the form by the appropriate office, the Court does not make any findings regarding the sufficiency of the submission of the 2013 Beneficiary Designation. Because the Court concludes that the case can be resolved based on a lack of indicia of receipt by the appropriate office, the Court finds it unnecessary to further analyze whether additional procedures for designating a beneficiary were satisfied.

Furthermore, the 2007 Beneficiary Designation bears additional indicia of receipt as it contains information about what employing office received the designation form, a signature of an authorized official who received the form, and a date of when the form was received. (Vasquez App. at Ex. A -2, Ex. A-3, Ex. A-4.) When the Insured followed the procedures for designating a beneficiary of his FEGLI policy in 2007, he validly designated Defendant Elvira Avelar. Furthermore, the validity of the 2007 Beneficiary Designation is undisputed.

Even viewing the evidence in the light most favorable to the non-movant party, this Court finds that since the 2013 Beneficiary Designation was ineffective, the 2007 Beneficiary Designation was the most recent, and in fact the only, valid beneficiary designation received by the Insured's employing agency within the meaning of the FEGLIA. As the FEGLIA mandates the proceeds to be paid to the most recent "beneficiary designated by the employee in a signed and witnessed writing received before death in the employing office," this Court finds Defendant Elvira Avelar entitled to the FEGLI Benefits.[14]

## CONCLUSION

Based on the foregoing, the Court finds that there is no genuine dispute of material fact in this case such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Accordingly, the Court **DENIES** Defendant Vasquez's Motion for Summary Judgment [Docket No. 20] and **GRANTS** Defendant Avelar's Cross-Motion for Summary Judgment [Docket No. 24].

---

[14] 5 U.S.C. § 8705(a).

It is further **ORDERED** that Defendant Avelar is entitled to receive the Insured's FEGLI Benefits that have been deposited in the Court's Registry by Plaintiff, plus all accrued interest, if any.

SIGNED October 22, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE